UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RONALD DUGAS (#314846)**                               CIVIL ACTION

**VERSUS**

**WARDEN BURL CAIN, ET AL.**                             NO. 09-0177-BAJ-CN

<u>NOTICE</u>

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in chambers in Baton Rouge, Louisiana, October 20, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD DUGAS (#314846)                                    CIVIL ACTION

VERSUS

WARDEN BURL CAIN, ET AL.                                  NO. 09-0177-BAJ-CN

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the defendants' Motions for Summary Judgment, rec.doc.nos. 18 and 32.  These motions are opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Jonathan Roundtree, Dr. William Reinbold, Warden Burl Cain, Lt.Col. Chryal Honore, Sgt. Melissa Bernard, Sgt. Anthony McCoy, and unidentified "John Doe" employees at LSP, complaining that on December 4, 2007, he purchased a quantity of cashews from the prison commissary.[1]  When he was thereafter eating some of the cashews on the evening of December 10, 2007, he noticed that the package was contaminated with what appeared to be insect or spider parts.[2]  The plaintiff spit out the food he was chewing, but when he awoke the next morning, he was allegedly suffering with symptoms of severe food poisoning, including diarrhea, vomiting and stomach pain.  Although he

---

[1]  The plaintiff has since voluntarily dismissed his claims asserted against defendants Burl Cain, Chryal Honore, Melissa Bernard and Anthony McCoy.

[2]  In his amendment to the original Complaint, rec.doc.no. 10, the plaintiff asserts his belief that the material in the package of cashews was "a mold/fungus, called Aspergillus Flavus which produces a carcinogenic substance called Aflatoxin."

was seen on that date by a health care worker on the cell tier, he complains that he was not sent to the prison infirmary until three days later on December 14, 2007. The plaintiff asserts that he was then diagnosed with a "stomach infection" and was provided with Tylenol and "Zipro" (twice-a-day for 14 days), but he complains that he was not given a follow-up appointment and that neither his blood nor stool was tested to determine what he was suffering with. When the plaintiff continued to suffer with similar symptoms, he submitted another request for medical attention on December 19, 2007, but this request allegedly went unanswered. Finally, in May, 2008, the plaintiff allegedly began to experience and complain of additional symptoms, consisting of changes in his eating habits and a fear of insects in his food and in his cell. He also began to wake up at night with the feeling that insects were crawling on his body, causing him to scratch at his skin until it bled. He asserts that notwithstanding his many requests for assistance, his medical complaints have been disregarded, and he asserts that he is still in need of medical care.

    The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, and certified copies of the plaintiff's medical records and administrative remedy proceedings.

    Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

    In response to the plaintiff's allegations, the defendants first

contend that the plaintiff is precluded from bringing this action by virtue of the Eleventh Amendment to the United States Constitution, which Amendment prohibits the bringing of any lawsuit in federal court against a state, its agencies or persons acting as official representatives thereof.  As hereafter discussed, the defendants are correct that this Amendment precludes the bringing of a lawsuit seeking monetary damages against the defendants in their official or representative capacities under § 1983.  However, the plaintiff has named the defendants in both their individual and their official capacities.[3]

The distinction between personal and official capacity suits was addressed by the United States Supreme Court in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  In Hafer, the Court made clear that a suit against a state official in his official or representative capacity for monetary damages is treated as a suit against the state and is barred by the Eleventh Amendment. Id.  Notwithstanding, a suit against a state official in his personal or individual capacity seeks to impose individual liability upon a government official for actions taken by the official under color of state law.  Accordingly, the plaintiff is entitled to assert a claim for monetary damages against the defendants insofar as the defendants are sued in their individual capacities for actions taken by them which may have caused a deprivation of the plaintiff's constitutional rights.

Turning to the plaintiff's claims asserted against the defendants

---

[3] Although the plaintiff initially asserts, in a section of his Complaint entitled "Parties", that he is specifically naming the defendants in their individual capacities, he later makes reference, in the section of his Complaint entitled "Claims of Relief", to the defendants' official capacities. Accordingly, the Court will interpret the plaintiff's Complaint as naming the defendants in both capacities.

in their individual capacities, the defendants next assert, in response to the plaintiff's allegations, that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id.  In the instant case, the defendants assert that the plaintiff's claims fail in the first instance because he has failed to make a showing that the defendants have participated in any violation of his constitutional rights.[4]

---

[4] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory.  Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

Undertaking the Saucier analysis, the Court concludes that the defendants' motions are well-taken and that they are entitled to qualified immunity in connection with the plaintiff's claims.

The Eighth Amendment to the United States Constitution prohibits the wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to state a claim under the Eighth Amendment of improper or inadequate attention to medical needs, a prisoner must assert both that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, supra; Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

In addition, pursuant to well-settled legal principles, in order for a defendant to be found liable under § 1983, he must either have been personally involved in conduct causing the alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the actions of the defendant and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under

§ 1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying the above standard, the Court concludes that the plaintiff has failed to allege or show sufficient direct and personal involvement by defendants Roundtree and Reinbold in the violations alleged, and specifically, has failed to allege or show that these defendants have been deliberately indifferent to his serious medical needs. Specifically, in his original Complaint, the plaintiff provides, as to defendant Roundtree, only the conclusory assertion that this defendant "showed 'deliberate indifference' to my serious medical need, causing plaintiff injury [and] also knew about plaintiff's serious medical need and failed to respond reasonably to it for a period exceeding 15 months ...." And in his Amended Complaint, rec.doc.no. 23, wherein the plaintiff added defendant Reinbold as a defendant, the plaintiff states only that defendant Reinbold was "over mental health". The plaintiff at no time stated that either of these defendants had provided medical treatment to him or were otherwise personally involved in his medical diagnosis or treatment. Clearly, therefore, he failed to include sufficient factual allegations as to the direct and personal involvement of these persons in his medical care, or as to any alleged failure to provide him with medical care, and on this basis, these defendants are entitled to dismissal of the plaintiff's claims asserted against them.

Moreover, the medical records do not bear out the plaintiff's assertions relative to deliberate medical indifference by defendants Roundtree and Reinbold or by any other health care providers at LSP.[5]

---

[5] The plaintiff refers in his Complaint and pleadings to several specific Health Care Request forms which he filed relative to his medical complaints. Three of these relate to events occurring in December, 2007, specifically Health Care Request Form

These records reflect that, after consuming the contaminated cashews on December 10, 2007, the plaintiff requested medical attention the next day, December 11, 2007, and was seen on that date by a health care provider who prescribed Tylenol and Pepto Bismol.  Three days later, on December 14, 2007, the plaintiff again requested medical attention, at which time he was seen by E.M.T. Bernard, who ordered that the plaintiff be transported by ambulance to the prison infirmary.  Upon arrival at the infirmary, a urinalysis and blood analysis were undertaken, and the plaintiff was seen by a physician, Dr. Moody, who prescribed an immediate dose of Kaopectate and also prescribed Cipro for five (5) days.  Several days later, on December 19, 2007, the plaintiff again requested medical attention and was again visited by an E.M.T.  According to the medical record from this encounter, the plaintiff refused at that time to get out of bed for a physical examination because it was "too early".  Notwithstanding, a referral for an "M.D. review" was made, and there is a subsequent notation that the plaintiff was no longer experiencing "loose stool".  The plaintiff made no further requests for medical treatment relative to having consumed the contaminated cashews until eight months later in August, 2008.  Although he made several complaints to health care providers between February and June, 2008, regarding dry and itchy skin, and requesting a renewal of his prescription for Benadryl

---

No. #041724 (dated December 11, 2007, the day after he consumed the contaminated cashews), Health Care Request Form No. #700826 (dated December 14, 2007, three days later), and Health Care Request Form No. #041731 (dated December 19, 2007, four days after that).  The remainder relate to events occurring at the end of 2008 and the beginning of 2009, specifically Health Care Request Form No. #034455 (dated November 26, 2008), Health Care Request Form No. #044893 (dated December 22, 2008), Health Care Request Form No. #045317 (dated February 6, 2009), Health Care Request Form No. #045319 (dated February 26, 2009), and Health Care Request Form No. #045319 (dated March 31, 2009).

for this condition, he did not attribute these complaints to the incident involving the tainted cashews, but rather referred to his condition as being a rash or "shower itch".  Further, there are references in the plaintiff's medical records suggesting that his complaints of dry and itching skin pre-dated that incident inasmuch as he was initially prescribed Benadryl in September, 2007.  Finally, on August 18, 2008, after having expressed no mental health concerns during routine psychological screenings during the preceding eight months (see the plaintiff's mental health records at rec.doc.no. 35-1), the plaintiff was seen by a mental health worker regarding a complaint of "bad dreams" stemming from the incident of December, 2007.  The mental health worker noted, however, that the plaintiff was "not overtly psychotic in mood, manner, thinking or behavior" and advised the plaintiff to "address his concerns to medical [because Mental Health] does not treat bad dreams." No further intervention was recommended at that time, and the plaintiff made no further formal requests for medical attention until November 26 and December 22, 2008, when he requested medical attention, stating that he was "having problems in my eating habits" and was "wak[ing] up at odd times of the night feeling like insects are crawling on me."  The attending E.M.T., Anthony McCoy, recommended on each occasion that the plaintiff keep his upcoming clinic visits at the prison infirmary. Finally, in February, 2009, it is noted in the plaintiff's medical records that he was scheduled to see the psychiatrist, Dr. Reinbold, on February 23, 2009, and that he was diagnosed on March 11, 2009, with a "possible eating disorder".  Further, in May, 2009, Dr. Reinbold began prescribing medications which, as reported in regular follow-up visits, have helped the plaintiff control his sensory hallucinations.

In summary, it appears that the plaintiff initially received

appropriate care for his acute complaints of food poisoning in December, 2007, which complaints resolved over the course of several weeks.[6] Thereafter, almost a year later, in November, 2008, when the plaintiff began to actually complain to health care providers regarding alleged psychological effects resulting from that incident, he was referred to the mental health department and, in a relatively short period of time, was provided with a psychiatric consultation which has resulted in prescribed medication and in regular follow-up treatment and attention thereafter.  On this showing, it appears clear that although the plaintiff is not happy with the medical care which he has received, prison officials have not been deliberately indifferent to his serious medical needs.  To the contrary, it appears that his complaints have routinely been attended to and that his medical condition has not been ignored by prison officials.[7]

The foregoing conclusion is not altered by the plaintiff's conclusory assertion, in his opposition to the defendants' motion, that defendants Roundtree and Reinbold were personally aware of his condition

---

[6] The Court further notes, as an aside, that the plaintiff's original complaint that he was provided with contaminated cashews is not one of constitutional dimension.  The law is clear that a single incidence of unintended food poisoning is not a constitutional violation.  Cf., George v. King, 837 F.2d 705 (5th Cir. 1988).

[7] The plaintiff complains that summary judgment is not appropriate because he has not been allowed to undertake needed discovery.  However, where qualified immunity is asserted by defendants who are public officials, discovery is very limited. See Schultea v. Wood, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc). Considering that all of the plaintiff's medical records have been filed into the record of this proceeding, and considering that the plaintiff has not identified any discovery which, in the Court's view, would alter the Court's conclusions herein, the Court finds that the plaintiff's contention regarding the need for additional discovery is unpersuasive.

by virtue of his health care request forms and through his administrative grievances, yet failed to intervene to address his complaints. In the first place, the mere fact that the plaintiff may have made requests for medical attention in an institution housing more than 5,000 inmates does not establish any particularized knowledge on the part of the supervisory defendants, in the absence of an allegation that the defendants were personally involved in his health care. Further, the law is clear that the plaintiff has no constitutional right to have his administrative grievances addressed, investigated, or favorably resolved by prison officials. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Accordingly, any claim regarding the alleged failure of the defendants to properly address, investigate or respond to his complaints or administrative grievances regarding his medical care is without legal foundation.

The plaintiff also seeks to invoke the supplemental jurisdiction of this court. District courts, however, may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, the Court concludes that it is appropriate for the Court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the defendants' motions for summary judgment, rec.doc.nos. 18 and 32, be granted, dismissing the plaintiff's claims asserted herein, and that this action be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, October 20, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**